**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

FREDRICK BRUCE KNUTSON,    )
an individual,                     )
                                 )
            Plaintiff,     )
                                 )
vs.                             )     Case No. CIV-14-606-SLP
                                 )
CITY OF OKLAHOMA CITY,     )
a municipal corporation, et al.,     )
                                 )
            Defendants.    )

## <u>ORDER</u>

Before the Court are Defendant City of Oklahoma City's ("City") Motion for Summary Judgment, Defendants Charles Locke ("Locke") and Christopher Smith's ("Smith") Motion for Summary Judgment, and Plaintiff's Partial Motion for Summary Judgment. These motions are fully briefed. Based upon the parties' submissions, the Court makes its determination.

I.    <u>Background</u>

Plaintiff owns property in Oklahoma City, at 9101 S. Council Road. Plaintiff's property is zoned agricultural, or "AA", and has been zoned AA since Plaintiff purchased the property in 2003. Plaintiff uses his property for agricultural purposes, and his single-family rural homestead is also located on his property. Plaintiff has made multiple attempts to rezone his property to a zoning classification other than AA, but each request has been denied.

Defendant City is a local municipal corporation. Defendant City creates ordinances and regulations with regard to zoning and other matters within the city limits of Oklahoma City pursuant to its powers as a municipality. Defendant Locke has been employed as the Code Enforcement Superintendent for Oklahoma City from July 2009 to present. He is responsible for enforcing portions of the Oklahoma City Municipal Code and supervising all employees within the Code Enforcement Division, including Defendant Smith. In August 2006, Defendant Smith began his employment in the Code Enforcement Division as a Code Inspector I. Defendant Smith's job duties as a Code Inspector I included responding to complaints regarding certain code violations and issuing violation notices and/or citations when he observed municipal code violations. Beginning in July 2009, the Code Enforcement Division began investigating and enforcing Oklahoma City zoning violations, including but not limited to Defendant City's sign code.

In response to the denial of his applications to rezone his property, Plaintiff painted signs on farm equipment and other objects located on his property. These signs included messages that were critical of, and derogatory toward, Plaintiff's neighbors, the City government, and City officials, including City Councilman Lawrence McAtee and Defendant Locke. Plaintiff has posted hundreds of signs over the years and has had different signs displayed during different time periods.

Defendant City has adopted ordinances which dictate the manner in which people may display outdoor signs (the "Sign Code"). Chapter 3, section 100 of the Sign Code includes ten (10) subparagraphs which identify various types of signs that may be displayed without a permit. Chapter 3, section 100, subsection 6 of the Sign Code provides:

> § 3-100. – Temporary signs and display material not requiring a permit.
>
> No permit shall be required for the following temporary signs and display materials. Said signs shall conform to the standards contained in this section, and to sight triangle regulations. All such signs shall be securely attached to a structure or to stakes or posts that are firmly embedded in the ground. They shall not be illuminated unless specifically permitted herein.
>
>      *      *      *
>
> (6) Noncommercial, expressive signs, residential. Noncommercial expressive signs limited to two signs per frontage with an aggregate of eight square feet of display surface area per frontage shall be permitted in residential areas.

Sign Code § 3-100(6).

Over the years, Defendant City has received numerous complaints regarding various signs,[1] displays, inoperable vehicles, and high grass on Plaintiff's property, and City code inspectors went to Plaintiff's property 50 to 100 times. Until June 2012, Plaintiff never received a citation for any violation, but had received at least one notice of violation. Prior to June 2012, Defendant Smith was told by his superiors that § 3-100(6) could not be applied to property zoned AA and had been directed by Defendant Locke in the spring of 2010 to respond specifically to an illegal signs complaint concerning Plaintiff's property as "no violation."

---

[1] The number and size of the signs on Plaintiff's property remained fairly constant between 2010 and 2012.

On June 11, 2012, Defendant City received a complaint at its Action Center regarding a potential code violation at Plaintiff's property. Defendant Smith was assigned to investigate the complaint. On June 12, 2012, Defendant Smith went to Plaintiff's property and observed several large, noncommercial, expressive signs on the property. Defendant Smith issued a Notice of Violation for violating the size and number restrictions set forth in § 3-100(6). A formal Notice of Violation was sent to Plaintiff on June 13, 2012. The notices of violation ordered Plaintiff to remove the signs or face criminal prosecution. It was determined by the City's Municipal Counselor's Office that the phrase "residential area" as used in § 3-100(6) could include AA zoned property and because Plaintiff's property had a residence and neighboring properties contained residences, § 3-100(6) could be applied to Plaintiff's property.[2]

On June 27, 2012, Defendant City received a letter from Plaintiff requesting a hearing on the Notice of Violation. A meeting regarding the Notice of Violation was scheduled for July 23, 2012. Defendant Locke and an assistant municipal counselor attended the meeting on behalf of Defendant City. Plaintiff was given the opportunity to present information regarding the signs on his property. Following the meeting, Plaintiff was advised that the Notice of Violation would not be reversed and that he could appeal the decision. Plaintiff chose not to appeal the decision. Sometime after the Notice of Violation was issued, Plaintiff began to display signs directly critical of Defendant Locke.[3]

---

[2] It is unclear exactly when the Municipal Counselor's Office made this determination.

[3] It appears most likely that the signs were added after Defendant Locke's decision not to reverse the Notice of Violation.

On August 27, 2012, Defendant Smith sent an e-mail to Defendant Locke attaching photographs of the signs currently displayed on Plaintiff's property, which included the signs critical of Defendant Locke.

At the same time Plaintiff requested a hearing, Plaintiff advised the City of a property located at 12825 SW 58th Street that had a number of large signs displayed on its property. In July 2012, a City Code Inspector I was assigned to inspect the property. The property was inspected, and a notice of violation was issued. However, after further investigation, it was determined that there was no violation of the Sign Code because the signs were determined to be "antique" or "collectable" signs.[4]

On September 5, 7, 10, and 12, 2012, Defendant Smith checked Plaintiff's property and observed that Plaintiff still had noncommercial, expressive signs in excess of the limits provided for in § 3-100(6) on his property. Plaintiff was issued four municipal court citations (one for each day) for violating the ordinance and photographs of the property were taken each day.[5] The Municipal Counselor's Office filed informations against Plaintiff, one for each day of the citations.

Plaintiff contested the allegation that he was in violation of § 3-100(6), and a criminal trial was held on January 18, 2013 for all four criminal citations. At the conclusion of the trial, Plaintiff was convicted of all four citations and was fined $400 plus costs for each case. Plaintiff appealed the decision to the Oklahoma Court of Criminal Appeals. On

---

[4] There is nothing in the Sign Code that defines or discusses "collectable" or "antique" signs.
[5] After receiving the criminal citations, Plaintiff removed the expressive signs from his property.

April 10, 2014, the court reversed Plaintiff's convictions and remanded the case to the Oklahoma City Municipal Court to dismiss based upon Defendant City's failure to meet its burden of proof regarding Plaintiff's property being in a "residential area." Following the reversal of his convictions, Plaintiff again began displaying expressive signs on his property.

On June 12, 2014, Plaintiff filed the instant action, alleging that Defendants violated his First Amendment free speech rights as a result of the enforcement of § 3-100(6), retaliated against him for exercising his free speech rights by prosecuting him under § 3-100(6), and selectively enforced the ordinance against him in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also alleges that Defendants violated his free speech rights as protected by Article 2, Section 22 of the Oklahoma Constitution. The parties now move for summary judgment as to Plaintiff's claims.

II.    Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

A.    Qualified Immunity

Defendants Locke and Smith assert that they are entitled to qualified immunity on Plaintiff's federal claims. The Tenth Circuit employs a three-step inquiry in determining whether qualified immunity applies. *See Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005).

> First, we ask whether the plaintiff's allegations, if true, establish a constitutional violation. If not, the suit is dismissed; if so, we move to the second step: whether the law was clearly established at the time the alleged violations occurred. This step gives the official an opportunity to show that he neither knew or should have known of the relevant legal standard because the law was not clearly established at the time he acted. Where the law is not clearly established, courts do not require officials to anticipate its future developments, and qualified immunity is therefore appropriate.
>
> If the law was clearly established, we reach the third step of the inquiry: whether, in spite of the fact that the law was clearly established, "extraordinary circumstances" – such as reliance on the advice of counsel or on a statute – so prevented [the official] from knowing that his actions were unconstitutional

> that he should not be imputed with knowledge of a clearly
> established right. This occurs only rarely.

*Id.* (internal quotations and citations omitted). Assuming Plaintiff has shown a constitutional violation[6] and that the law was clearly established at the time the violation occurred, the Court finds Defendants Locke and Smith have shown extraordinary circumstances, specifically reliance on the advice of counsel and on the City's Sign Code, and are entitled to qualified immunity.

While reliance on counsel is not inherently extraordinary, in certain circumstances, it rises to the level of extraordinary circumstances. *See V-1 Oil Co. v. State of Wy., Dep't of Envtl. Quality*, 902 F.2d 1482, 1488 (10th Cir. 1990). When evaluating a reliance on counsel claim, a court looks at the totality of the circumstances, including the following factors: "[1] how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, [2] whether complete information had been provided to the advising attorney(s), [3] the prominence and competence of the attorney(s), and [4] how soon after the advice was received the disputed action was taken." *Id.* at 1489.

Further, an official's reliance on a statute, regulation, ordinance, or official policy that explicitly sanctions the conduct in question may also absolve the official from knowing that his conduct was unlawful. *See id.* at 1231; *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251-52 (10th Cir. 2003).

> This reflects the sensible notion that officers should be able to
> rely on the legislature's determination that a statute is
> constitutional. Of course, this principle is not without limit –
> we have also said that where a statute authorizes conduct that

---

[6] As set forth below, the Court has found that Plaintiff has established a constitutional violation.

is patently violative of fundamental constitutional principles, reliance on the statute does not immunize the officer's conduct. Thus, officers can rely on statutes that authorize their conduct – but not if the statute is obviously unconstitutional. Again, the overarching inquiry is whether, in spite of the existence of the statute, a reasonable officer should have known that his conduct was unlawful.

*Lawrence*, 406 F.3d at 1232 (internal quotations and citations omitted). Further,

a court must consider whether reliance on the statute rendered the officer's conduct "objectively reasonable," considering such factors as: (1) the degree of specificity with which the statute authorized the conduct in question; (2) whether the officer in fact complied with the statute; (3) whether the statute has fallen into desuetude; and (4) whether the officer could have reasonably concluded that the statute was constitutional.

*Roska*, 328 F.3d at 1252.

In the case at bar, it is undisputed that prior to 2012, individuals in the Code Enforcement Division did not believe that § 3-100(6) could be applied to property zoned AA.[7] They also understood that signs could not be prohibited based on the message they conveyed, but size and number restrictions could be imposed. It is also undisputed that over the years, numerous complaints had been made regarding the signs on Plaintiff's property, but the Code Enforcement Division believed nothing could be done about Plaintiff's signs. However, sometime during 2012, the Municipal Counselor's Office was consulted regarding the signs on Plaintiff's property, and the Municipal Counselor and other attorneys in his office determined that § 3-100(6) could be applied to Plaintiff's property, that Plaintiff's signs violated § 3-100(6)'s size and number restrictions, and that

---

[7] There is no evidence showing that the Municipal Counselor's Office was ever consulted prior to 2012 regarding whether § 3-100(6) could be applied to property zoned AA.

Plaintiff could be cited for the violation and would be required to remove many of his signs. During the consultation, emails were exchanged and meetings were held with individuals in the Code Enforcement Division, including Defendant Locke and for at least one meeting, Defendant Smith, and photographs of Plaintiff's property were provided to the Municipal Counselor's Office. Once the determination was made, Defendant Locke was advised by the Municipal Counselor of the applicability of § 3-100(6) to Plaintiff's property, and Defendant Locke advised Defendant Smith of the determination.

Having reviewed the totality of the circumstances, the Court finds Defendants Locke and Smith's reliance of the advice of the Municipal Counselor, which included advice regarding § 3-100(6), and their reliance on § 3-100(6) itself rise to the level of extraordinary circumstances that prevented Defendants Locke and Smith from knowing that their actions were unconstitutional such that they should not be imputed with knowledge of a clearly established right. The advice from the Municipal Counselor was unequivocal and specifically addressed whether § 3-100(6) applied to Plaintiff's property. Further, the Municipal Counselor and the other attorneys in his office were provided copies of pictures of Plaintiff's property and the signs on his property and were aware of the nature of the area surrounding Plaintiff's property. Additionally, the advice came from the Municipal Counselor himself, the highest level non-subordinate attorney with whom Defendants Locke and Smith could consult. While it is unclear exactly when the Municipal Counselor reached his determination regarding the applicability of § 3-100(6) to Plaintiff's property, the Court finds the timing of the advice to Defendant Locke does not impact the reasonableness of the reliance by Defendants Locke and Smith on the advice based upon

the particular facts of this case. Additionally, the Court finds § 3-100(6) is not obviously unconstitutional such that its unconstitutionality would have been apparent to either Defendant Locke or Defendant Smith, particularly in light of the fact that the ordinance had never been challenged and the Municipal Counselor himself was advising them to utilize the ordinance. A reasonable City official would not have known that this conduct was unlawful.

Accordingly, the Court finds that Defendants Locke and Smith are entitled to qualified immunity and summary judgment should be granted in their favor on Plaintiff's federal claims.

B.    First Amendment

1.    Constitutionality of Sign Code

Plaintiff asserts that the City's Sign Code is facially unconstitutional. The First Amendment prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., amend. I. Thus, "a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (internal quotations and citation omitted). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. Additionally, "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230 (internal citation omitted). Further, "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive,

content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 2228 (internal quotations and citation omitted). Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 2231 (internal quotations and citations omitted).

The City's Sign Code generally requires a permit for signs; the Sign Code, however, allows for certain exceptions to that requirement. For example, § 3-100 sets forth ten exceptions to the permit requirement. While these ten categories of signs are excepted from the permit requirement, each category has different specific requirements. For example, a real estate sign, residential, shall not exceed 12 square feet of display surface area (or 32 square feet of display surface area in the case of a special event); a real estate sign, commercial or industrial, shall not exceed 64 square feet of display surface area; a construction sign, one through four family residential, shall not exceed 12 square feet of display surface area, and noncommercial, expressive signs, residential, are limited to two signs per frontage with an aggregate of eight square feet of display surface area per frontage. *See* Sign Code § 3-100(1),(2),(5),(6). Thus, the specific restrictions in the Sign Code that apply to any particular sign depends entirely on the type of sign it is, and more specifically entirely on the communicative content of the sign.[8] The City's Sign Code singles out specific subject matter for differential treatment, even though it does not target viewpoints within that subject matter. Commercial or industrial real estate signs are given

_____

[8] In fact, Defendant City admits that in order to determine which category a particular sign falls within, including whether a sign is commercial, noncommercial, or expressive, code inspectors are required to read the content of the sign.

more favorable treatment than residential real estate or construction signs, which are themselves given more favorable treatment than residential noncommercial, expressive signs. Additionally, there is no exception from the permit requirement in the Sign Code for noncommercial expressive signs in locations other than residential areas; thus, if a property owner does not live in a residential area, he is absolutely prohibited from displaying any noncommercial expressive messages on his property without a permit. The Court finds the City's Sign Code is clearly content-based on its face.[9] *See Reed*, 135 S. Ct. at 2230. *See also Neighborhood Enters., Inc. v. City of St. Louis*, 644 F.3d 728 (8th Cir. 2011) (finding similar sign code content-based on its face); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250 (11th Cir. 2005) (finding similar sign code content-based on its face).

Because the City's Sign Code imposes content-based restrictions on speech, the Sign Code violates the First Amendment unless the provisions survive strict scrutiny, which requires Defendant City to prove that the restrictions further a compelling interest and are narrowly tailored to achieve that interest. The Court finds that Defendant City has not proven that the Sign Code's restrictions on speech further a compelling interest or that the restrictions are narrowly tailored to achieve that interest. Defendant City asserts the purpose of the Sign Code is to increase safety, lessen congestion on the streets, conserve residential values, provide for improved community appearance, and encourage the most

---

[9] While this type of sign ordinance may seem like a perfectly rational way to regulate signs, "a clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech, even if laws that might seem 'entirely reasonable' will sometimes be struck down because of their content-based nature." *Reed*, 135 S. Ct. at 2231 (internal quotations and citation omitted).

appropriate use of land. "[A] municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling." *Neighborhood Enters.*, 644 F.3d at 737-38 (internal quotations and citations omitted). *See also Solantic*, 410 F.3d at 1268 (holding city's interests in aesthetics and traffic safety not compelling interests). Further, the restrictions set forth in the Sign Code are not narrowly tailored to achieve Defendant City's asserted purpose of the Sign Code. Defendant City has not shown that limiting certain categories of signs is necessary to eliminate threats to traffic safety, to lessen congestion on the streets, to improve the aesthetics of the City, or to encourage the most appropriate use of land but that limiting other categories of signs is not.

> Although the sign code's regulations may generally promote aesthetics and traffic safety, the City has simply failed to demonstrate how these interests are served by the distinction it has drawn in the treatment of exempt and nonexempt categories of signs. Simply put, the sign code's exemptions are not narrowly tailored to accomplish either the City's traffic safety or aesthetic goals.

*Solantic*, 410 F.3d at 1268. The Eleventh Circuit's reasoning in *Solantic* applies equally to the case at bar.

Because the City's Sign Code creates a content-based scheme of speech regulation that is not narrowly tailored to serve a compelling government interest, the City's Sign

Code necessarily fails to survive strict scrutiny. Accordingly, the Court finds the City's Sign Code violates the First Amendment and is, therefore, unconstitutional.[10],[11]

### 2. Plaintiff's First Amendment claim

Defendant City moves for summary judgment as to Plaintiff's First Amendment violation claim. Specifically, Defendant City asserts that Plaintiff's First Amendment rights were not violated by the enforcement § 3-100(6) of the Sign Code because that section is a content neutral time, place, and manner restriction that complies with the First Amendment. Because the Court has found that the Sign Code, including § 3-100, is unconstitutional, the Court finds that Defendant City is not entitled to summary judgment as to Plaintiff's First Amendment violation claim.

### 3. Plaintiff's First Amendment retaliation claim

Defendant City asserts that it is entitled to summary judgment as to Plaintiff's First Amendment retaliation claim.

> To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct.

---

[10] Because the Court finds the Sign Code unconstitutional on its face, the Court need not determine whether the Sign Code is unconstitutionally vague as applied to Plaintiff.

[11] In his partial motion for summary judgment, Plaintiff requests the Court declare that the Sign Code is unconstitutional and violates the First Amendment. Based upon the Court's finding, Plaintiff's request should be granted.

*Nielander v. Bd. of Cty. Comm'rs of the Cty. of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009) (internal citation omitted).[12]

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Plaintiff and viewing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant City's actions caused Plaintiff injury that would chill a person of ordinary firmness from continuing to engage in his First Amendment right by posting signs on his property and as to whether Defendant City's actions were substantially motivated as a response to Plaintiff's posting of signs on his property. First, the Court would note that "[t]he focus, of course, is upon whether a *person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled." *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (emphasis in original). The Court finds that the prospect of criminal prosecution and/or a daily fine of $400 would likely chill a person of ordinary firmness from keeping his noncommercial, expressive signs up on his property. Second, Plaintiff has presented evidence, which when viewed in his favor, supports a finding that Defendant City's citation and prosecution of Plaintiff for his signs in 2012 were substantially motivated as a response to the messages contained on Plaintiff's signs. The fact that no action was taken by Defendant City prior to 2012 does not preclude a finding that the action taken in 2012 was motivated as a response to the messages on the signs. Plaintiff has submitted evidence that indicates that because of the content of the signs,

---

[12] Defendant City does not dispute that Plaintiff was engaged in constitutionally protected activity.

Defendant City had been trying to figure out a way to get rid of Plaintiff's signs for years and only in 2012 did the City, and particularly the Municipal Counselor's Office, find a way to accomplish that through the use of § 3-100(6).

Accordingly, the Court finds that Defendant City is not entitled to summary judgment as to Plaintiff's First Amendment retaliation claim.

C.    Plaintiff's Fourteenth Amendment Claim

Defendant City moves for summary judgment as to Plaintiff's Fourteenth Amendment claim. The United States Supreme Court has held that the Equal Protection Clause of the Fourteenth Amendment is violated when a city's ordinance, affecting First Amendment interests, "slip(s) from the neutrality of time, place, and circumstance into a concern about content" and is not narrowly tailored to the city's legitimate objectives. *Police Dep't of the City of Chicago v. Mosley*, 408 U.S. 92, 99-102 (1972). As set forth above, the Court has found that the City's Sign Code creates a content-based scheme of speech regulation that is not narrowly tailored to serve a compelling government interest. Accordingly, the Court finds the City's Sign Code violates the Fourteenth Amendment and is unconstitutional. The Court, therefore, finds that Defendant City is not entitled to summary judgment as to Plaintiff's Fourteenth Amendment claim.

D.    Plaintiff's Oklahoma Constitution Claim

Defendant City asserts that Plaintiff's Oklahoma Constitution claim is barred because Plaintiff failed to comply with the notice provisions of the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151, *et seq.* ("OGTCA"). Plaintiff asserts that his claim is not subject to the OGTCA and/or that it is not barred for lack of

jurisdiction.  In 2014, the Oklahoma Legislature amended the OGTCA to make clear that claims under the Oklahoma Constitution fell under the OGTCA; these amendments became effective April 21, 2014.[13]  Specifically, the definition of "tort" was amended to include a violation of a duty imposed by the Constitution of the State of Oklahoma.  *See* Okla. Stat. tit. 51, § 152(14).  Additionally, Okla. Stat. tit. 51, § 153(B) was amended to state: "The liability of the state or political subdivision under The Governmental Tort Claims Act shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, the Oklahoma Constitution, or otherwise."  Thus, in order for Plaintiff to maintain a claim for violation of his right to free speech under the Oklahoma Constitution, Plaintiff must comply with the requirements of the OGTCA.

Under the OGTCA, "[a] claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs." Okla. Stat. tit. 51, § 156(B).  The Oklahoma Supreme Court has held that notice is a jurisdictional prerequisite to bringing a claim under the OGTCA and that failure to present the required notice "results in a permanent bar of any action derivative of the tort claim." *Harmon v. Cradduck*, 286 P.3d 643, 652 (Okla. 2012).  Because Plaintiff has not shown that he presented the required notice under the OGTCA, the Court finds that Plaintiff's Oklahoma Constitution claim is barred.[14]

---

[13] This action was filed June 12, 2014; thus, the amended version of the OGTCA would apply to it.

[14] Even if Plaintiff had satisfied the notice requirement, it appears Plaintiff's claim would fall within the exemption from liability set forth in Okla. Stat. tit. 51, § 155(4), which provides that a

Accordingly, the Court finds that Defendant City is entitled to summary judgment as to Plaintiff's Oklahoma Constitution claim.

Additionally, Defendants Locke and Smith assert that they are not proper parties to Plaintiff's Oklahoma Constitution claim. The OGTCA provides:

> In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant with the exception that suits based on the conduct of resident physicians and interns shall be made against the individual consistent with the provisions of Title 12 of the Oklahoma Statutes.

Okla. Stat. tit. 51, § 163(C). The OGTCA defines "scope of employment" as follows:

> performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud.

Okla. Stat. tit. 51, §152(12).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Plaintiff and viewing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has not presented sufficient evidence to create a genuine issue of material fact as to whether Defendants Locke and Smith were acting within the scope of their employment. The evidence as a whole only supports a finding that Defendants Locke and Smith were acting within the scope of their employment. Defendants Locke and Smith, therefore, are not proper parties to Plaintiff's Oklahoma Constitution claim.

---

political subdivision shall not be liable if a claim results from the enforcement of an ordinance, whether valid or invalid.

Accordingly, the Court finds Defendants Locke and Smith are entitled to summary judgment as to Plaintiff's Oklahoma Constitution claim.

E.    Injunction

Defendant City moves for summary judgment on Plaintiff's request for an injunction, asserting that Plaintiff does not have standing to seek an injunction. In light of the Court's ruling that the City's Sign Code violates the First and Fourteenth Amendments, the Court finds that additional briefing on Plaintiff's request for an injunction is appropriate. The parties are directed to file supplemental briefs on the injunction issue within twenty (20) days of the date of this order.

IV.    Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant City's Motion for Summary Judgment [docket no. 27], GRANTS Defendants Locke and Smith's Motion for Summary Judgment [docket no. 28], and GRANTS IN PART and DENIES IN PART Plaintiff's Partial Motion for Summary Judgment [docket no. 41] as follows:  the Court finds:  (1) Defendants Locke and Smith are entitled to qualified immunity and summary judgment should be granted in their favor on Plaintiff's federal claims; (2) the City's Sign Code violates the First and Fourteenth Amendments and is unconstitutional; (3) Defendant City is not entitled to summary judgment as to Plaintiff's First Amendment violation claim, First Amendment retaliation claim, and Fourteenth Amendment violation claim; and (4) Defendants are entitled to summary judgment as to Plaintiff's Oklahoma Constitution claim.

**IT IS SO ORDERED** this 22nd day of July, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE